**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0710-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LAVAR T. RODGERS, a/k/a
LAVAR T. ROGERS,

     Defendant-Appellant.

_____

> Submitted November 7, 2018 – Decided December 17, 2018
>
> Before Judges Yannotti and Natali.
>
> On appeal from Superior Court of New Jersey, Law Division, Salem County, Indictment No. 12-01-0005.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah E. Elsasser, Deputy Attorney General, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from an order entered by the Law Division on March 9, 2017, which denied defendant's petition for post-conviction relief (PCR). We affirm.

I.

In January 2012, a Salem County grand jury returned an indictment charging defendant with first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2) (counts one, two, three and four); third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (counts five, six, seven and eight); first-degree attempted murder, N.J.S.A. 2C:5-1; N.J.S.A. 2C:11-3 (counts nine, ten, eleven and twelve); second-degree aggravated assault, serious bodily injury, N.J.S.A. 2C:12-1(b)(1) (counts thirteen, fourteen, fifteen and sixteen); third-degree aggravated assault against a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a) (count seventeen); fourth-degree aggravated assault against a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a) (counts eighteen, nineteen and twenty); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (counts twenty-one and twenty-two); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (counts twenty-three and twenty-four); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts twenty-five and twenty-six);

2

fourth-degree injury to animals used for law-enforcement purposes, N.J.S.A. 2C:29-3.1 (count twenty-seven); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b) (counts twenty-eight and twenty-nine). In July 2012, defendant was tried before a jury.

At the trial, the State presented evidence that defendant's girlfriend R.T. was in a residence in the City of Salem, with her children and a friend.[1] Defendant was in the kitchen with his friends. R.T. said it appeared defendant had been smoking marijuana. Defendant told his friends and R.T.'s friend to leave. He then grabbed R.T. by the wrist. He stated that he had been "set up" and if they returned, he would shoot them. R.T. broke free and defendant threatened to shoot her and one of the children. He held a gun to R.T.'s neck and pointed the gun at the child.

At some point, defendant's friends returned and defendant threatened to shoot them if they entered. R.T. laid down on the floor. Defendant sat next to her with the gun. R.T. used her cell phone and posted a message on Facebook stating that defendant had a gun and he was holding her and the children. She asked someone to call the police and included her address. Someone saw the message and called 9-1-1.

---

[1] We use initials to identify R.T. in order to protect her privacy.

A-0710-17T4

Officers of the Salem City police department and other law enforcement officers responded to the location. They arrived at R.T.'s residence, which is located in one of two adjoining townhouses. The occupant of the neighboring townhouse was leaving when the police arrived. The police established a perimeter around the building, which included both townhouses.

Robert Eller, William Robinson, Walter Christy, and other law enforcement officers decided to enter the residence through the front door. They were accompanied by a police dog. Eller banged on the front door, announced it was the police, and said someone should come to the door or the police would come in. They heard a woman scream and a man call out, "Don't come in here."

Christy held the storm door back while Eller kicked in the other door. Robinson entered with a police dog. When he entered the residence, Robinson observed a young child a short distance away. He heard three gunshots. Robinson testified that he saw defendant lying on top of a woman. Robinson fired two shots and retreated with the dog. He yelled for defendant to drop the gun and come out.

Senior Investigator Steven Dick of the Salem County Prosecutor's Office testified that shots started coming out of the house as soon as Eller kicked in the door. Dick stated that shots were fired at him and other officers. Dick looked

4

into the house and observed a firearm pointed in his direction. He stepped back. Shots were exchanged. One shot hit the storm door and shattered it. Robinson was hit by the debris from the doorframe. Dick was grazed by a bullet.

Dick retreated to a police vehicle about twenty to thirty feet from the entrance to the home. The police dog also was shot and required medical treatment for a bullet puncture to the lung. Dick observed a black male come to the front door. At trial, Dick testified that defendant was the person he saw at the front door.

Several hours later, members of the New Jersey State Police arrived and took control of the scene. The State Police maintained the original perimeter around the home. They attempted to negotiate with defendant for several hours, using a hostage negotiator and a loudspeaker. Later, R.T. and the children left the residence, and the State Police continued their efforts to get defendant to surrender.

The police fired tear gas canisters into the basement, ground floor, and second floor of R.T.'s residence, but defendant remained inside. At approximately 2:30 a.m., the police entered R.T.'s residence a second time. They searched the ground floor, the second floor, and the basement. In the basement, the police discovered a passageway into the adjacent townhouse.

A-0710-17T4

They entered the adjacent townhouse, made their way upstairs to the ground floor, and searched the kitchen.

They found defendant hiding in a cabinet underneath the sink. The police arrested defendant and turned him over to detectives. The police found a .38 caliber revolver in the debris in the kitchen of the adjacent townhouse. In a bedroom in R.T.'s residence, they found a .45 caliber automatic handgun. The police recovered five shells that matched the .38 caliber gun.

The trial judge dismissed counts twenty-three (second-degree unlawful possession of a weapon), twenty-five (second-degree possession of a weapon for an unlawful purpose), and twenty-eight (second-degree persons not to have weapons). The jury found defendant guilty on all the remaining charges.

The judge sentenced defendant on October 3, 2012. The judge merged certain offenses and sentenced defendants on counts nine, ten, eleven, and twelve to concurrent terms of fifty-five years of incarceration, each with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The judge also sentenced defendant to a consecutive seven-year term on count twenty-nine, with a five-year period of parole ineligibility.

Defendant appealed from the judgment of conviction dated October 3, 2012. We affirmed defendant's conviction and sentences. State v. Rodgers, No. A-1696-12 (App. Div. Nov. 5, 2014). The Supreme Court denied defendant's petition for certification. State v. Rodgers, 221 N.J. 287 (2015).

On July 16, 2015, defendant filed a pro se petition for PCR, alleging ineffective assistance of counsel, prosecutorial misconduct, and a conflict of interest. The court assigned PCR counsel, and counsel filed a supplemental brief.

The PCR court heard oral argument on January 23, 2017. The court filed a written opinion dated March 9, 2017, concluding that defendant had not established a prima facie case of ineffective assistance of counsel, and an evidentiary hearing was not required. The court entered an order denying PCR and this appeal followed.

On appeal, defendant's PCR counsel argues that the PCR court erred by failing to conduct an evidentiary hearing on the petition. PCR counsel contends he established a prima facie case of ineffective assistance of counsel because his trial attorney failed to: (1) adequately cross-examine R.T., Dick, and Robinson; (2) request a mistrial when a deliberating juror admitted seeing a newspaper article about the case; (3) call certain witnesses at trial; and (4) object to the

7

assistant prosecutor's allegedly improper comments and questions. Defendant also has filed a supplemental pro se reply brief which essentially makes the same arguments as those presented in the counseled brief.

## II.

The court should conduct an evidentiary hearing on a PCR petition when the defendant establishes a prima facie case for PCR, there are material issues in dispute that cannot be resolved based on the existing record, and the court determines that a hearing is necessary to resolve the claims presented. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b).

To prevail on a claim of ineffective assistance, a defendant must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), which was later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). The defendant must show that his attorney's performance was deficient. Strickland, 466 U.S. at 687. The defendant also must show that his attorney's "deficient performance prejudiced the defense." Ibid.

In considering whether a defendant satisfies the first prong of the Strickland test, we recognize a strong presumption that trial counsel exercised reasonable professional judgment in the handling of the case. Id. at 690. To overcome that strong presumption, a defendant must show that counsel's actions or omissions were not within the "wide range of professionally competent assistance." Id. at 690. Furthermore, to establish prejudice under the second prong of the Strickland test, the defendant must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

A. Defense Counsel's Cross-Examination of R.T., Dick, and Robinson

Defendant argues that his trial attorney's cross-examination of R.T. was deficient. He asserts that R.T. was a reluctant witness, and claims R.T. was threatened she would be subject to a Division of Child Protection and Permanency (DCPP) action and the removal of her children if she did not testify against defendant. Defendant also claims that before the trial, R.T. submitted an affidavit to the court stating that the allegations against defendant were false.

In its decision, the PCR court noted that R.T. had provided the police with a recorded statement and testified at trial about the events leading up to defendant's arrest. Defense counsel cross-examined R.T. extensively about

various aspects of her testimony, including the message she posted on Facebook asking for assistance. Defense counsel asked R.T. whether she had actually seen defendant with a gun, and whether defendant fired the gun. Counsel also asked R.T. about her exit from the residence.

Assuming defense counsel had seen R.T.'s affidavit before she testified, counsel did not err by electing not to question R.T. about it. As the PCR court noted in its decision, if counsel had questioned R.T. about the affidavit, this would merely have informed the jury that R.T. thought the allegations against defendant were false, despite substantial evidence to the contrary.

We note that in the affidavit, R.T. did not mention she had been threatened with action by the DCPP, and there is no evidence indicating defense counsel was aware of any such threats. The PCR court found that counsel's cross-examination of R.T. was not deficient and, even if it were, defendant failed to show how he was prejudiced thereby. The record supports the court's findings.

Defendant further argues that defense counsel's cross-examination of Dick and Robinson was deficient. He asserts Dick received a superficial injury during the incident, and neither Dick nor Robinson were struck by a bullet. Defendant contends counsel should have questioned these witnesses about their "supposed"

injuries and elicited testimony that the injuries could have been caused by something other than a bullet.

The PCR court found, however, that defendant failed to refute the strong presumption that defense counsel had rendered effective assistance in the cross-examination of Dick. The PCR court noted that Dick had testified he believed he had been shot during the exchange of gunfire, but did not know the extent of his injury. On direct examination, Dick testified that a bullet did not penetrate his shoulder, but a bullet grazed his jacket and he was injured as a result.

Defendant contends his trial attorney should have asked Dick whether he could have been injured when he backed out through the broken storm door. The PCR court found that defense counsel reasonably chose not to question Dick concerning the possible alternate explanation for his injury. The court also found that defendant failed to show that he was prejudiced by counsel's failure to cross-examine Dick concerning his injuries. The record supports the court's findings.

Moreover, at trial, Robinson also acknowledged that a bullet did not penetrate his shoulder, but he was hit by other debris during the incident. The State presented evidence indicating that Robinson was injured by debris during the exchange of gunfire between defendant and law enforcement. We are

11

convinced defense counsel was not deficient in failing to question Robinson as to the source or extent of his injury, and defendant was not prejudiced by counsel's failure to question Robinson further about his injury.

B. Defense Counsel's Failure to Seek a Mistrial

Defendant argues his trial attorney was deficient because he failed to seek a mistrial after an article appeared on the front page of the Salem Sunbeam newspaper regarding the trial. The record shows that the trial judge brought the article to the attention of the attorneys, and they asked the judge to question the members of the jury to determine if anyone had read any newspaper article about the case. The judge indicated if any juror indicated he or she had done so, he would question the juror at sidebar and decide how to proceed.

The judge questioned the members of the jury. Juror No. 3 indicated she had seen the article and mentioned it to the other jurors. The judge questioned the juror outside the presence of the other members of the jury. Juror No. 3 indicated that she saw the headline and defendant's picture, but put the newspaper "away immediately."

The juror told the judge that this would not have any impact on her ability to be fair and impartial. The judge then questioned the other members of the jury. He asked if Juror No. 3's statement that she had seen an article about the

case in a newspaper would affect their ability to be fair and impartial. No juror responded affirmatively.

The PCR court found that defense counsel was not ineffective for failing to seek a mistrial. The court stated there was nothing in the record to indicate that Juror No. 3 had obtained prejudicial information about the case from the article, and no evidence showing that the juror's exposure to the headline had the capacity to influence the jury's deliberations.

The court noted that defendant's attorney had conceded the headline was not inflammatory. The court also determined that counsel's failure to seek a mistrial did not have any effect on the outcome of the trial, and defendant had not shown that the result of the proceeding would have been different, if counsel had moved for a mistrial. The record supports these findings.

C. Defense Counsel's Failure to Call Witnesses

Defendant argues his trial counsel was deficient because counsel did not call Vengenock as a hostile witness. According to defendant, Dick testified that Vengenock identified defendant by name at the scene. Defendant claims Vengenock denied that he had identified defendant, and Dick would not have been able to identify him in the absence of Vengenock's identification.

13

The record shows that at trial, Dick testified that he observed a black male approach the front door to the residence, and he identified defendant as that person. On cross-examination, defense counsel questioned Dick about his identification. Dick said that when he first looked into the residence, he saw a black female on the floor with a child, but he was not able to see the person holding the weapon. Dick stated however, that he did see the individual's face for a split second, when he came to the door. Dick's view of the individual's face occurred simultaneously with statements by Vengenock and another officer's statements identifying defendant.

The PCR court found that defense counsel was not deficient in failing to call Vengenock as a witness. We note that in his cross-examination by Dick, defense counsel established that Dick did not see the individual who was holding the weapon. He also established that Dick heard Vengenock identify defendant at the same time he observed defendant appear in the doorway. The record supports the PCR court's finding that counsel did not err by failing to call Vengenock. His testimony would not have undermined the credibility of Dick's identification. The record also supports the PCR court's determination that counsel's failure to call Vengenock did not have any effect on the outcome of the trial.

14

Defendant also contends his attorney should have called State Troopers Rocap and Erdman. John Parkinson was one of the Troopers who entered the home. Parkinson testified that R.T.'s residence and the adjacent townhouse were surrounded by law enforcement officers. He stated that no one came out except a female and the children. He said that he did not see them leave the building, but he was told the female had exited the house, and he saw her walking down the street, coming to the command post.

On cross-examination of Parkinson, defense counsel established that Rocap had written a report about the female exiting the building. He also elicited testimony that Erdman was near the building and relayed information that a female had exited the adjacent townhouse from the rear. Parkinson agreed that Rocap's report and the information relayed to him may have contained mistakes.

The PCR court found that defense counsel was not deficient in failing to call Rocap and Erdman as witnesses. The discrepancies between their statements and Parkinson's testimony were of no significance whatsoever to the defense. The court further found that defendant failed to show that the result of the proceeding would have been different if these witnesses had been called. The record supports the court's findings.

15

D. Defense Counsel's Failure to Object to the Prosecutor's Questions and Comments

Defendant further argues that his trial attorney erred by failing to object to certain questions and comments by the assistant prosecutor. The assistant prosecutor asked the State's witnesses whether they were married. The assistant prosecutor also asked the State's witnesses whether they had children or grandchildren, and if so, their ages. Defendant contends the questions sought information that was irrelevant. He asserts that the purpose of the question was to generate an emotional response and sympathy for the officers involved in the incident.

The PCR court noted in its decision that in his direct appeal, defendant had argued the assistant prosecutor had improperly appealed to the sympathies of the jurors by making certain comments during the trial. We held that the comments were not improper and did not deprive defendant of his right to a fair trial. Rodgers, slip op. at 15-16. Similarly, the comments at issue here were not improper and do not deprive defendant of his right to a fair trial.

Thus, defendant's counsel was not deficient in failing to object to the assistant prosecutor's questions and comments cited here. Moreover, defendant failed to show that the result of the proceeding would have been different if counsel had objected to the questions and comments.

16

In sum, the PCR court correctly determined that defendant failed to present a prima facie case of ineffective assistance of counsel. Therefore, the court correctly found that defendant was not entitled to an evidentiary hearing on his petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0710-17T4